UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONALD HARRISON,

        Plaintiff,

   v.                               Civil Action 2:18-cv-1023
                                        Judge Sarah D. Morrison
                                        Magistrate Judge Elizabeth Preston
ZACH SCOTT, *et al.*,             Deavers

        Defendants.

## OPINION AND ORDER

Plaintiff Donald Harrison was detained at the Franklin County Jail when his post-operative leg wound became infected, requiring follow-up surgeries and eventual amputation. Plaintiff brought this action under 42 U.S.C. § 1983, alleging that Jail medical personnel and the Franklin County Sheriff violated his constitutional right to adequate medical care and also that Franklin County is liable for maintaining an unconstitutional policy that limited Plaintiff's ability to obtain adequate medical care. Plaintiff has dismissed his claims against Jail nurses, leaving his claims against Franklin County, the Franklin County Sheriff, three Jail physicians, and ten Doe Defendants. All remaining named Defendants—Franklin County Sheriff Zach Scott, Dr. Mendel Reid, Dr. Mohamed Hashi Abib, and Dr. Won Song—have filed Motions for Summary Judgment. (Defs.' Mots., ECF Nos. 62–65). This matter is before the Court for consideration of these Motions, as well as Plaintiff's Opposition and Defendants' Replies. (Pl.'s Opp'n, ECF No. 80; Defs.'

Replies, ECF Nos. 81–84). For the reasons set forth below, the Court **GRANTS** summary judgment in favor of Sheriff Scott and Drs. Reid and Abib and **DENIES** summary judgment in favor of Dr. Song. In addition, Plaintiff is **ORDERED** to **SHOW CAUSE WITHIN FOURTEEN DAYS** why the Court should not dismiss the Doe Defendants without prejudice for failure to effect service pursuant to Federal Rule of Civil Procedure Rule 4(m).

**I.     STATEMENT OF FACTS**

Plaintiff's leg was broken during his September 15, 2016 arrest. Police transported Plaintiff to Riverside Hospital for treatment. Following surgery, Riverside discharged Plaintiff on September 21. Plaintiff entered the Jail in a wheelchair, with his post-operative leg wound bandaged and splinted.

Riverside transmitted Plaintiff's medical records and post-surgical care instructions to the Jail. These instructions included recommendations for prescription medications, follow-up with a primary-care doctor within two weeks, referral to an orthopedic clinic for a cast change within two weeks, elevation of his leg, and continued physical therapy.

Upon Plaintiff's admission to the Jail, Jail nursing staff assigned him to medical housing and placed him on the Jail's wound-care list, meaning that Jail nurses would monitor Plaintiff's leg wound daily. Jail nursing staff also consolidated Riverside's treatment records with the Jail records into a medical chart and transmitted this chart to Defendant Dr. Reid.

Dr. Reid then translated the Riverside discharge instructions into medical orders that could be executed in the Jail environment. Specifically, in addition to

the daily wound-care checks, Dr. Reid ordered prescription medications and that Plaintiff treat with Defendant Dr. Song, a private orthopedic specialist contracted to provide bi-weekly medical clinics in the Jail.[1]

On September 22, the day after Plaintiff arrived at the Jail, he experienced "massive bleeding" seeping through his wound dressings, prompting Jail medical staff to transfer him to Grant Medical Center for emergency treatment. (*See* Song Dep. 84:11-13, ECF No. 52; Medical Records, ECF No. 79-5, PAGEID# 2982; Harrison Dep. 28:16-23; 47:2-24, ECF No. 50.) Grant physicians diagnosed Plaintiff with "pain following surgery;" "bleeding from wound;" and "decubitus ulcer of heel, stage 1, left." (Medical Records, ECF No. 79-5, PAGEID# 2972.) Grant physicians re-dressed and splinted Plaintiff's leg, noting: "[t]he patient has not been able to keep the leg elevated as needed [in] jail and the edema is . . . pulling the incision . . . he also has a stage 1 ulcer developing." (Medical Records, ECF No. 79-6, PAGEID# 2983.) Grant medical staff issued aftercare instructions, including continuing medication, elevation and icing, a follow-up appointment with Plaintiff's surgeon, and specific instructions directed to Plaintiff advising him to elevate his leg, wear support stockings, and wash and check his skin for sores daily. Plaintiff was discharged the next day, on September 23.

Defendant Dr. Abib processed the Grant discharge papers. (*Id*. at PAGEID#

---

[1] The record also contains a September 22 order from Dr. Reid referring Plaintiff for an off-site follow-up treatment for head trauma, as well as undated orders from Dr. Reid referring Plaintiff for other follow-up treatment with Riverside physicians.

3

2972.) Dr. Abib did not issue any new orders in connection with the Grant aftercare instructions, but left in place Dr. Reid's medical orders, and Plaintiff remained on the Jail's wound-care list. (*See* Abib Dep. 141:4-9, ECF No. 51.)

On September 29, six days after Plaintiff's September 23 re-admission to the Jail, Plaintiff treated with Dr. Song. The parties dispute what treatment Plaintiff received during the intervening five days. Plaintiff alleges that with the exception of medication, his repeated requests for treatment were denied. (*See* Harrison Dep. 68:12-69:15; 57:17-61:1; 62:14-64:13; 66:5-67:18; 110:7-23; Medical Records, ECF No. 79-1, PAGEID# 2895-99.) Plaintiff's wound-care log reflects no treatment on September 24; that on September 25, Plaintiff's "dressing [was] not changed, [and he showed] no bleeding;" and that Plaintiff refused treatment on September 26, 27, and 28. (Medical Records, ECF No. 79, PAGEID# 2915-16; *see also* Abib Dep. 160:2-162:14.) Plaintiff disputes that he refused treatment and testified as follows: "[n]ever would I deny wound care. And you can ask any inmate there, they wouldn't deny getting out of that cell, period." (Harrison Dep. 68:9-11.)

The parties also dispute what happened during Dr. Song's September 29 examination of Plaintiff. Dr. Song's treatment records reflect the following: that Dr. Song found Plaintiff's wound to be "benign;" that Plaintiff was "[a]ble to move [his] toes;" and Dr. Song's diagnosis of "X-ray status post-op open reduction internal fixation left distal tibia and fibula." (Medical Records, ECF No. 79-1, PAGEID# 2933; Song Dep. 63:5-22.) In addition, Dr. Song issued orders for Plaintiff's sutures to be removed in a week and that Plaintiff be provided a cast boot, a walker, an x-

4

ray, and pain medicine. Dr. Song testified that he was sure that he reviewed Plaintiff's chart, that he remembered examining Plaintiff's wound, that he recalled seeing "a little cellulitis," that he "put on a lot of padding," that he changed Plaintiff's dressing, and that he applied a cast. (Song Dep. 60:2-5; 53:2-8; 61:4-16; 64:4-20; 115:5-17.) In contrast, Plaintiff testified that Dr. Song reviewed x-rays with him and that although Plaintiff asked Dr. Song to examine his wound, Dr. Song told Plaintiff that he "didn't have time" and that he would instead have somebody else examine his wound. (Harrison Dep. 104:15-17; 108:10-15.) Dr. Song denies that he told Plaintiff that he did not have time to examine his wound. (Song Dep. 99:19-100:15; 102:2-12.) Dr. Song's September 29 examination was the only time he treated Plaintiff during the period at issue.

Plaintiff's wound-care log reflects no treatment on September 30; that Plaintiff's wound was wrapped with ACE wrap on October 1; that he refused treatment on October 2; and no treatment for October 3. Plaintiff testified that when Jail nursing staff examined his wound on October 4, "it was completely black." (Harrison Dep. 67:9-11.) Following this October 4 examination, Jail nursing staff obtained a nonparty physician's order for additional treatment of the wound, and Plaintiff was referred to Dr. Reid for examination. During Dr. Reid's October 5 examination, he observed "purulent, green drainage," and consequently, he immediately transferred Plaintiff to Riverside for emergency treatment and specialized care. (Medical Records, ECF No. 79-1, PAGEID# 2876, 2884-85, 2932; Medical Records, ECF No. 79-7, PAGEID# 2984.)

Plaintiff required nearly a month of hospitalization to treat his infected wound and was discharged on November 1. Two weeks later, Plaintiff was released from the Jail. In the following months, Plaintiff required additional hospitalizations to treat the complications arising from his wound infection. On May 1, 2017, Plaintiff's leg was amputated below the knee.

## II. PROCEDURAL BACKGROUND

Plaintiff commenced this action on September 7, 2018, asserting individual-capacity medical indifference claims under 42 U.S.C. § 1983 against Drs. Reid, Abib, and Song, as well as the Franklin County Sheriff. Defendants argue on summary judgment that Plaintiff's leg wound did not constitute a sufficiently serious medical need, that they were not deliberately indifferent to Plaintiff's serious medical need, and that they are protected by qualified immunity.

Plaintiff also asserts a claim against Franklin County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), alleging he was injured by a County policy of not allowing orthopedic Jail patients to treat with physicians other than Dr. Song. Defendants dispute this policy's existence and point out that, even if this policy existed, Plaintiff was, in fact, treated by other physicians at the Jail and at two different hospitals.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving

party lacks evidence to support an essential element of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party presents "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### IV. DISCUSSION

Defendants move for summary judgment on all remaining claims. The Court considers Plaintiff's medical indifference claims before turning to his constitutional challenge to the alleged Jail policy and his claims against the Doe Defendants.

### A. Plaintiff's Medical Indifference Claims

"[P]retrial detainees have a constitutional right to be free from deliberate indifference to serious medical needs under the Due Process Clause of the

Fourteenth Amendment." *Greene v. Crawford Cty., Mich.*, 22 F. 4th 593, 605 (6th Cir. 2022) (citing *Griffith v. Franklin Cty., Ky.*, 975 F.3d 554, 566 (6th Cir. 2020)).

The Sixth Circuit's decision in *Brawner v. Scott County, Tennessee*, 14 F. 4th 585 (6th Cir. 2021), published after the parties' briefing in this action, resolves their disagreement over the legal standard applicable to pretrial detainees' medical indifference claims. *Brawner* holds that for a plaintiff's medical indifference claim to survive summary judgment, he must "present evidence from which a reasonable jury could find (1) that [he] had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and [the defendant] either (a) acted intentionally to ignore [the plaintiff's] serious medical need, or (b) [the defendant] recklessly failed to act reasonably to mitigate the risk the serious medical need posed to" him. *Brawner,* 14. F.4th at 597.

With respect to the first prong, an objectively serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008). With respect to the second prong, "[a] pretrial detainee must prove 'more than negligence, but less than subjective intent—something akin to reckless disregard.'" *Brawner,* 14 F.4th at 596 (quoting *Castro v. Cty. of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir. 2016) (*en banc*)).

Applied here, Plaintiff has amply proffered evidence upon which a factfinder could rely to conclude that his post-operative leg wound constituted a serious

8

medical need. Significantly, Plaintiff's post-operative leg wound had been diagnosed by physicians at both Riverside and Grant as requiring treatment in the form of post-surgical care, including treatment with medications, follow-up with a primary-care physician, and referral to a specialist for examination and a cast change. In addition, Jail nursing staff determined that Plaintiff required placement on the Jail's wound-care list, which meant Jail medical staff would monitor Plaintiff's leg wound daily. Because Plaintiff has satisfied the first prong, the Court now considers whether Plaintiff has adduced, for each remaining named Defendant, evidence of a deliberate act or omission sufficient to satisfy the second prong.

### 1. Drs. Reid and Abib

Plaintiff has failed to adduce facts upon which a factfinder could rely to conclude that Dr. Reid intentionally acted or failed to act and either intentionally ignored Plaintiff's post-operative leg wound or recklessly failed to act reasonably to mitigate the risks attendant with Plaintiff's wound. It is undisputed that Dr. Reid was not tasked with examining Plaintiff upon his admission to the Jail. Rather, Dr. Reid's role was limited to translating Riverside's discharge instructions into Jail orders. It is undisputed that Dr. Reid did so, issuing orders for Plaintiff's post-surgical care, including ordering prescription medications, treatment with an orthopedic specialist, and follow-up with Riverside physicians, all in addition to the daily wound care the Jail nurses had ordered upon Plaintiff's admission. Moreover, after Plaintiff's infection had progressed and he was referred to Dr. Reid for examination, Dr. Reid ordered Plaintiff immediately transferred to Riverside for emergency treatment and specialized care when he saw signs of infection. Because

9

Plaintiff has not proffered evidence reflecting that Dr. Reid acted or failed to act with reckless disregard, Dr. Reid is entitled to summary judgment.

Dr. Abib is likewise entitled to summary judgment. Like Dr. Reid, Dr. Abib was not tasked with examining Plaintiff but instead with processing Grant's discharge instructions into Jail orders. Dr. Abib processed the Grant discharge orders. Although he did not issue new orders, Dr. Abib left in place Dr. Reid's orders relating to post-surgical care, and Plaintiff remained on the Jail's wound-care list. Because Plaintiff has not proffered evidence reflecting that Dr. Abib acted or failed to act with reckless disregard, Dr. Abib is entitled to judgment as a matter of law.

**2.   Dr. Song**

Disputed material issues of fact preclude entry of summary judgment in Dr. Song's favor. Dr. Song treated Plaintiff's post-operative wound on September 29. Dr. Song testified that he reviewed Plaintiff's medical chart, which reflected that Plaintiff had experienced post-operative wound complications necessitating hospitalization at Grant six days prior. Plaintiff's medical chart further reflected that Plaintiff had not treated with a physician since his release from Grant and that during the intervening five days, Jail nurses treated Plaintiff only on September 25 and did not change his dressing that day. Viewing the evidence in the light most favorable to Plaintiff, when Plaintiff asked Dr. Song to examine his wound, Dr. Song refused on the grounds that he did not have time. Dr. Song proceeded to tell Plaintiff that he would instead have someone else examine his wound, but the record contains no evidence reflecting that Dr. Song conducted any such follow up. Thus, Plaintiff has presented evidence upon which a factfinder could rely to

conclude that Dr. Song acted intentionally to ignore Plaintiff's serious medical need for post-operative wound care when he (a) intentionally refused to examine Plaintiff's wound or (b) recklessly failed to act reasonably to mitigate the risks posed by Plaintiff's leg wound in failing to either examine the wound or ensure that another physician did so. Dr. Song is therefore not entitled to judgment as a matter of law.

Dr. Song's argument that he is entitled to the defense of qualified immunity is equally unavailing. "When the defendant raises qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to summary judgment." *Davenport v. Causey*, 521 F. 3d 544, 550 (6th Cir. 2008). "Despite this burden of proof, the facts are still viewed in the light most favorable to the plaintiff." *Id.* An official is entitled to qualified immunity unless he has violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). The analysis therefore involves two steps: (1) determine "whether the facts . . . make out a violation of a constitutional right," and (2) determine whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address either step first. *Id.* at 236. Dr. Song concedes that Plaintiff has a clearly established right to be free from deliberate indifference to a serious medical need. (*See* Song Mot. 16, ECF No. 65; Song Reply 6, ECF No. 82). And the foregoing analysis demonstrates that the facts, when viewed in a light most favorable to

11

Plaintiff, establish that Dr. Song violated Plaintiff's constitutional right to adequate medical care. Dr. Song is therefore not entitled to qualified immunity.

### 3. Sheriff Scott

Sheriff Scott is entitled to judgment as a matter of law on Plaintiff's individual-capacity claim. To plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States" and (2) that the deprivation was "caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Applied here, Plaintiff has not shown that Sheriff Scott personally performed any act or omission that deprived him of a constitutional right. Rather, Plaintiff alleges only that Sheriff Scott signed the County's contracts for medical services within the Jail. (Pl.'s Opp'n 37, ECF No. 80; *see also* Scott Mot. 7–8, ECF No. 64; Scott Reply 7-8, ECF No. 81.) The ministerial act of signing these contracts does not rise to the level of personal involvement required to sustain an individual-capacity medical indifference claim against Sheriff Scott. *See generally Grinter*, 532 F.3d at 575.

### B. Plaintiff's *Monell* Claim Against the County

Plaintiff's official-capacity claim against Sheriff Scott is a claim against Franklin County. *Monell,* 436 U.S. at 658. Because § 1983 does not "incorporate

doctrines of vicarious liability," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986), "[a] plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994)). "There must be a direct causal link between the policy and the alleged constitutional violation." *Id.* (internal quotation and citation omitted). In other words, the plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 879–80 (6th Cir. 2020) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)).

Here, Plaintiff's *Monell* claim fails even if the Court assumes that the County has a policy of precluding detainees with orthopedic medical needs from obtaining treatment in addition to the treatment Dr. Song provides during his prescheduled, bi-weekly clinics. This is because Plaintiff cannot show that such a policy was the moving force behind the injuries he alleges. Specifically fatal to Plaintiff's claim is that a non-party Jail physician ordered him transferred to Grant hospital on September 22, a non-party Jail physician ordered treatment for him on October 4,

and he was examined by Dr. Reid, who immediately transferred him to Riverside hospital, on October 5. Thus, even if the alleged policy existed, because it was not applied to Plaintiff, it could not have injured him. Sheriff Scott is therefore entitled to judgment as a matter of law on Plaintiff's official-capacity claim.

**C.     John and Jane Doe Defendants**

As noted above, Plaintiff's Complaint names ten Doe Defendants. Under Federal Rule of Civil Procedure 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. . . .

Fed. R. Civ. P. 4(m). In addition, Federal Rule of Civil Procedure 10(a) requires a plaintiff to "name all the parties" in the complaint. Though the naming of pseudonymous defendants is permissible where the party requires discovery to identify the true identity of the defendants, the party must subsequently amend the complaint to reflect the discovered identities and effect service over those named parties within Rule 4(m)'s 90-day window. *See Petty v. Cty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007) (affirming district court's dismissal of unnamed John Doe defendants pursuant to Rule 4(m) where the plaintiff failed to substitute the real names for his John Does and failed to serve them within Rule 4(m) timeframe).

Because Plaintiff has failed to timely substitute in the real names and effect service over his Doe Defendants, the Court **ORDERS** Plaintiff to **SHOW CAUSE WITHIN FOURTEEN DAYS** why this Court should not dismiss the Doe Defendants without prejudice for failure to effect service pursuant to Rule 4(m).

14

## V. DISPOSITION

For the reasons set forth above, the Court **GRANTS** the Summary Judgment Motions filed by Drs. Reid and Abib and Sheriff Scott. Dr. Song's Motion for Summary Judgment is **DENIED**. Finally, Plaintiff is **ORDERED** to **SHOW CAUSE WITHIN FOURTEEN DAYS** why this Court should not dismiss the Doe Defendants without prejudice for failure to effect service pursuant to Rule 4(m).

**IT IS SO ORDERED.**

      /s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**